## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| BlueRidge Fiber Solutions, LLC, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Complete Filter Media, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff BlueRidge Fiber Solutions, LLC ("Plaintiff" or "BlueRidge")), for its complaint against defendant Complete Filter Media, LLC ("Defendant" or "CFM"), pleads as follows:

### THE PARTIES

1.      BlueRidge is a limited liability company organized under the laws of Delaware and maintains its principal place of business at 456 South Robert Stone Way, Reedsville, West Virginia 26547.

2.      Upon information and belief, CFM is a limited liability company organized under the laws of Ohio and maintains its principal place of business at 410 South Ewing Street, Lancaster, Ohio 48130.

### NATURE OF THE ACTION

3.      This is an action for patent infringement in violation of the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because this case involves a federal question.

5.     This Court has personal jurisdiction in this action over CFM because, on information and belief, CFM is organized under the laws of Ohio and has its principal place of business in this judicial district.

6.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because CFM, upon information and belief, resides in this district and has committed acts of patent infringement in Ohio.

## FACTUAL ALLEGATIONS

### History of BlueRidge and CFM

7.     BlueRidge designs, manufactures, markets and sells, throughout the United States, filtration and separation media for use in diverse air treatment applications including commercial and residential HVAC, painting, manufacturing and specialty applications.

8.     BlueRidge operates a manufacturing facility in Reedsville, West Virginia.

9.     Superior Fibers, LLC, directly and indirectly through its subsidiary company Superior Reedsville Filtration, LLC (collectively, "Superior Fibers") continuously operated the manufacturing facility in Reedsville, West Virginia from 2006 until May 2024.

2

10.     On or about May 23, 2024, BlueRidge acquired all of the business assets, including the patents described herein, from Superior Fibers.

11.     BlueRidge has continued to operate the Reedsville facility since the date of the acquisition through the date hereof in a manner consistent with prior operations utilizing the patents and other intellectual property as described herein.

12.     BlueRidge leverages decades of experience to manufacture advanced glass filament media, often incorporating other forms of media to achieve advanced performance criteria. BlueRidge sells this media to its longstanding customer base, which includes market-leading global filtration original equipment manufacturers (OEMs).

13.     BlueRidge also customizes filtration and separation media solutions which provide exacting technical performance and significant advantages over competing offerings.

14.     Upon information and belief, CFM is owned directly or indirectly by CFM Global which advertises that it has been providing filtration solutions over 50 years.  Upon information and belief, CFM Global markets and sells ring panel filters made from bonded polyester fiber, pocket cube style filters for paint overspray and dust capture, and other filtration media products.

15.     Upon information and belief, in or about 2018, CFM made a calculated decision to copy Superior Fibers' and BlueRidge's methods for producing fiberglass filtration media with the goal of selling identical or nearly identical products in the marketplace.

**CFM's Efforts to Copy BlueRidge's Fiberglass Media Products**

16.     Superior Fibers used, and BlueRidge uses, bushing plates in the manufacture of fiberglass air filtration media.  The bushing plates wear down and require periodic replacement.

17.     As of 2018, the manufacturer and supplier of bushing plates to Superior Fibers was Rocket Shop, LLC ("Rocket Shop").

18.     Upon information and belief, in or about 2018, CFM purchased one or more bushing plates from Rocket Shop with the exact technical specifications of the bushing plates Superior Fibers ordered from Rocket Shop.

19.     On or about March 12, 2018, counsel for Superior Fibers provided written notice to counsel for CFM regarding Superior Fibers' patent portfolio.

20.     Upon information and belief, in or about late 2019 or early 2020, CFM acquired Rocket Shop.

21.     Mr. Edward Kistler ("Mr. Kistler") was employed by Superior Fibers from at least as early as 2006 through 2019.  By the end of his employment, Mr. Kistler had served as a Plant Manager for Superior Fibers, overseeing the entire process for production of fiberglass filtration media.

22.     Upon information and belief, in or about late 2019 or early 2020, CFM hired Mr. Kistler.

23.     Upon information and belief, by early 2020, CFM also employed Mr. Bill Miller, a former Executive Officer of Superior Fibers.

24.     On or about January 28, 2020, counsel for Superior Fibers issued a letter to counsel for CFM that cautioned CFM against infringing Superior Fibers' intellectual property.  The letter specifically referenced eight issued United States patents owned by Superior Fibers at the time.

25.     Upon information and belief, CFM has now manufactured and offered for sale one or more fiberglass media products (the "Accused Products") and provided one or more samples of the Accused Products to prospective customers.

26.     Upon information and belief, CFM made one or more samples of the Accused Products available for inspection by prospective customers at the FiltXPO International Filtration Conference & Exhibition held on April 29, 2025 to May 1, 2025.

**CFM's Infringement of BlueRidge's Patents**

27.     On July 16, 2019, United States Patent No. 10,351,462, entitled "Method of Manufacturing Fiberglass Filtration Media," ("the '462 Patent") was duly and legally issued.  A true and correct copy of the '462 Patent is attached hereto as Exhibit A.

28.     BlueRidge is the assignee of the entire right, title, and interest in and to the '462 Patent, including all rights to enforce the '462 Patent and to recover damages for past, present, and future infringement.

29.     Claim 1 of the '462 Patent recites:

A method of manufacturing fiberglass media comprising:

providing glass into a melter coupled to a bushing plate configured to produce glass filament strands, wherein the bushing plate is oriented at a 5 to 7 degree angle relative to a line perpendicular to the length of a

5

rotating drum, and further wherein the bushing plate comprises 298 to 425 orifices;

traversing the melter above the rotating drum in a first direction along a substantial length of the rotating drum followed by an opposite second direction along the substantial length of the rotating drum to define a pass;

depositing the glass filament strands onto the rotating drum;

traversing the melter in one or more passes at a first speed;

traversing the melter in one or more passes at a second speed;

spraying binder onto the glass filament strands on the rotating drum to form a fiberglass mat;

removing the fiberglass mat from the rotating drum;

providing the fiberglass mat onto a let-off table comprising a conveyor;

expanding the fiberglass mat to produce an expanded fiberglass mat comprising bundled filaments on an air entrance side of the expanded fiberglass mat that are wavy in three dimensions and progressively denser and less wavy bundles of filaments between the air entrance side and an air exit side of the expanded fiberglass mat;

providing the expanded fiberglass mat through a roller apparatus comprising an upper roller and a lower roller;

spraying liquid onto the bottom side of the expanded fiberglass mat; and

curing the expanded fiberglass mat in a curing apparatus.

30.     Upon information and belief, CFM infringes claim 1 of the '462 Patent by practicing the claimed method in the United States, including in this District.

31.     Upon information and belief, CFM has acquired and uses bushing plates manufactured by Rocket Shop that met Superior Fibers' specifications. Upon information and belief, to manufacture the Accused Products, CFM uses a bushing plate "oriented at a 5 to 7 degree angle relative to a line perpendicular to the length

6

of a rotating drum" and which further comprises "298 to 425 orifices" as previously specified by Superior Fibers to Rocket Shop.

32.    Mr. Kistler, as former Plant Manager at Superior Fibers, was familiar with Superior Fibers' novel methods of manufacturing fiberglass media, including methods for expanding fiberglass mat, providing fiberglass mat through rollers, and spraying liquid on the bottom side of a fiberglass mat prior to curing.

33.    Upon information and belief, each of the steps recited in claim 1 of the '462 Patent was known to Mr. Kistler as a result of his employment at Superior Fibers.

34.    Upon information and belief, Mr. Kistler had knowledge and motivation to employ the steps recited in claim 1 of the '462 Patent at CFM to produce the Accused Products.

35.    Upon information and belief, CFM has practiced and does practice each of the steps recited in claim 1 of the '462 Patent to produce one or more of the Accused Products.

36.    Upon information and belief, CFM also infringes additional claims of the '462 Patent, including without limitation, claims 2 and 7.

37.    CFM has had knowledge and notice of the '462 Patent since at least January 28, 2020.

38.    On October 23, 2018, United States Patent No. 10,106,452, entitled "System and Method of Continuous Glass Filament Manufacture," ("the '452 Patent")

was duly and legally issued. A true and correct copy of the '452 Patent is attached hereto as Exhibit B.

39.     BlueRidge is the assignee of the entire right, title, and interest in and to the '452 Patent, including all rights to enforce the '452 Patent and to recover damages for past, present, and future infringement.

40.     Claim 1 of the '452 Patent recites:

> An apparatus for manufacture of continuous glass filament filtration media, comprising:
>
> a reservoir comprising binder and configured to control a temperature of the binder;
>
> a rotatable drum;
>
> a traversing glass melting furnace configured to move in a first direction parallel to an axis of rotation of the rotatable drum;
>
> a bushing plate coupled to the traversing glass melting furnace, the bushing plate consisting of Inconel, wherein the bushing plate comprises a plurality of orifices configured to spin filaments;
>
> wherein the traversing glass melting furnace comprises a combustion heat source positioned above the bushing plate;
>
> a binder sprayer coupled to the traversing glass melting furnace;
>
> and one or more shields coupled to the bushing plate and extending vertically below the bushing plate;
>
> wherein the one or more shields enclose no more than three sides below the bushing plate so that at least one side remains open.

41.     Upon information and belief, CFM infringes claim 1 of the '452 Patent by practicing the claimed method in the United States, including in this District.

42.     Upon information and belief, CFM has acquired and uses bushing plates manufactured by Rocket Shop that met Superior Fibers' specifications. Upon

information and belief, to manufacture the Accused Products, CFM uses a bushing plate "consisting of Inconel" as previously specified by Superior Fibers to Rocket Shop.

43.     Mr. Kistler, as former Plant Manager at Superior Fibers, was familiar with Superior Fibers' novel methods of manufacturing fiberglass media, including the use of a temperature-controlled reservoir for binder, a binder sprayer, and the use of shields enclosing three sides below the bushing plate.

44.     Upon information and belief, each of the steps recited in claim 1 of the '452 Patent was known to Mr. Kistler as a result of his employment at Superior Fibers.

45.     Upon information and belief, Mr. Kistler had knowledge and motivation to employ the steps recited in claim 1 of the '452 Patent at CFM to produce the Accused Products.

46.     Upon information and belief, CFM also infringes additional claims of the '452 Patent, including without limitation, claims 2, 3, 15, and 16.

47.     CFM has had knowledge and notice of the '452 Patent since at least January 28, 2020.

48.     On November 26, 2019, United States Patent No. 10,487,427, entitled "System and Method for Continuous Strand Fiberglass Media Processing," ("the '427 Patent") was duly and legally issued.  A true and correct copy of the '427 Patent is attached hereto as Exhibit C.

49.     BlueRidge is the assignee of the entire right, title, and interest in and to the '427 Patent, including all rights to enforce the '427 Patent and to recover damages for past, present, and future infringement.

50.     Claim 1 of the '427 Patent recites:

A method of manufacturing fiberglass media comprising:

providing glass into a melter and through a bushing plate to produce continuous glass filament strands;

repeatedly traversing the melter above a rotating drum in a first direction along a substantial length of the rotating drum and an opposite second direction along the substantial length of the rotating drum;

depositing the continuous glass filament strands onto the rotating drum;

spraying resin onto the continuous glass filament strands on the rotating drum to form a fiberglass mat;

removing the fiberglass mat from the rotating drum;

providing the fiberglass mat through a roller apparatus comprising an upper roller and a lower roller;

applying a liquid consisting of water to the fiberglass mat; and

immediately after applying the liquid to the fiberglass mat, curing the fiberglass mat in a curing oven.

51.     Upon information and belief, CFM infringes claim 1 of the '427 Patent by practicing the claimed method in the United States, including in this District.

52.     Mr. Kistler, as former Plant Manager at Superior Fibers, was familiar with Superior Fibers' novel methods of manufacturing fiberglass media, including the use of resin spray, upper and lower rollers, and water sprays prior to curing.

53. Upon information and belief, each of the steps recited in claim 1 of the '427 Patent was known to Mr. Kistler as a result of his employment at Superior Fibers.

54. Upon information and belief, Mr. Kistler had knowledge and motivation to employ the steps recited in claim 1 of the '427 Patent at CFM to produce the Accused Products.

55. Upon information and belief, CFM has practiced and does practice each of the steps recited in claim 1 of the '427 Patent to produce one or more of the Accused Products.

56. Upon information and belief, CFM also infringes additional claims of the '427 Patent, including without limitation, claims 4, 6, and 9.

57. CFM has had knowledge and notice of the '427 Patent since at least January 28, 2020.

58. On May 15, 2018, United States Patent No. 9,968,876, entitled "Method of Manufacturing Fiberglass Filtration Media," ("the '876 Patent") was duly and legally issued. A true and correct copy of the '876 Patent is attached hereto as Exhibit D.

59. BlueRidge is the assignee of the entire right, title, and interest in and to the '876 Patent, including all rights to enforce the '876 Patent and to recover damages for past, present, and future infringement.

60. Claim 1 of the '876 Patent recites:

A method of manufacturing fiberglass media comprising:

providing glass into a melter configured to produce glass filament strands;

traversing the melter above a rotating drum in a first direction along a substantial length of the rotating drum followed by an opposite second direction along the substantial length of the rotating drum to define a pass;

depositing the glass filament strands onto the rotating drum;

traversing the melter in one or more passes at a first speed;

traversing the melter in one or more passes at a second speed;

wherein the second speed is faster than the first speed;

spraying binder onto the glass filament strands on the rotating drum to form a fiberglass mat;

removing the fiberglass mat from the rotating drum;

expanding the fiberglass mat to produce an expanded fiberglass mat comprising non-bundled filaments intersecting at or near 90 degree angles on an air exit side of the expanded fiberglass mat, and bundled filaments on an air entrance side of the expanded fiberglass mat, wherein the bundled filaments are wavy in three dimensions, and wherein the fiberglass mat comprises progressively denser and less wavy bundles of filaments between the air entrance side and the air exit side;

providing the expanded fiberglass mat through a spray apparatus and a roller apparatus, comprising an upper roller and a lower roller, configured to produce an air exit skin consisting of individual filaments and comprising 7.5% to 25% of the weight of the expanded fiberglass mat; and

curing the expanded fiberglass mat in a curing apparatus.

61.     Upon information and belief, CFM infringes claim 1 of the '876 Patent by practicing the claimed method in the United States, including in this District.

62.     Mr. Kistler, as former Plant Manager at Superior Fibers, was familiar with Superior Fibers' novel methods of manufacturing fiberglass media, including by

traversing a melter at different speeds when forming a fiberglass mat, expanding the fiberglass mat, and passing the expanded fiberglass mat through a spray apparatus and upper and lower rollers prior to curing.

63. Upon information and belief, each of the steps recited in claim 1 of the '876 Patent was known to Mr. Kistler as a result of his employment at Superior Fibers.

64. Upon information and belief, Mr. Kistler had knowledge and motivation to employ the steps recited in claim 1 of the '876 Patent at CFM to produce the Accused Products.

65. Upon information and belief, CFM has practiced and does practice each of the steps recited in claim 1 of the '876 Patent to produce one or more of the Accused Products.

66. Upon information and belief, CFM also infringes additional claims of the '462 Patent, including without limitation, claims 2, 3, and 7.

67. CFM has had knowledge and notice of the '876 Patent since at least January 28, 2020.

## COUNT I
### Direct Infringement of the '462 Patent in Violation of 35 U.S.C. § 271(a)

68. BlueRidge incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

69. The '462 Patent is valid and enforceable.

70. CFM has infringed and continues to infringe at least claims 1, 2, and 7 of the '462 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of

equivalents, by using the claimed methods of manufacturing fiberglass media to produce the Accused Products.

71.     BlueRidge has been and continues to be damaged by CFM's infringement of the '462 Patent.

72.     CFM's infringement of the '462 Patent has been and continues to be willful.

73.     BlueRidge has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial, through lost profits, lost sales, and/or lost royalties, due to infringement by CFM.

74.     BlueRidge has suffered, and will continue to suffer, permanent and irreparable injury for which BlueRidge has no adequate remedy at law.

75.     BlueRidge has never authorized CFM to practice the invention claimed in the '462 Patent.

76.     Upon information and belief, CFM will continue to infringe the '462 Patent unless enjoined by this Court.

77.     BlueRidge is entitled to relief as provided by 35 U.S.C. §§ 281 and 283-285.

## COUNT II
### Direct Infringement of the '452 Patent in Violation of 35 U.S.C. § 271(a)

78.     BlueRidge incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

79.     The '452 Patent is valid and enforceable.

80.    CFM has infringed and continues to infringe at least claims 1-3 and 15-16 of the '452 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by using the claimed methods of manufacturing fiberglass media to produce the Accused Products.

81.    BlueRidge has been and continues to be damaged by CFM's infringement of the '452 Patent.

82.    CFM's infringement of the '452 Patent has been and continues to be willful.

83.    BlueRidge has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial, through lost profits, lost sales, and/or lost royalties, due to infringement by CFM.

84.    BlueRidge has suffered, and will continue to suffer, permanent and irreparable injury for which BlueRidge has no adequate remedy at law.

85.    BlueRidge has never authorized CFM to practice the invention claimed in the '452 Patent.

86.    Upon information and belief, CFM will continue to infringe the '452 Patent unless enjoined by this Court.

87.    BlueRidge is entitled to relief as provided by 35 U.S.C. §§ 281 and 283-285.

## COUNT III
### Direct Infringement of the '427 Patent in Violation of 35 U.S.C. § 271(a)

88.    BlueRidge incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

89. The '427 Patent is valid and enforceable.

90. CFM has infringed and continues to infringe at least claims 1, 4, 6, and 9 of the '427 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by using the claimed methods of manufacturing fiberglass media to produce the Accused Products.

91. BlueRidge has been and continues to be damaged by CFM's infringement of the '427 Patent.

92. CFM's infringement of the '462 Patent has been and continues to be willful.

93. BlueRidge has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial, through lost profits, lost sales, and/or lost royalties, due to infringement by CFM.

94. BlueRidge has suffered, and will continue to suffer, permanent and irreparable injury for which BlueRidge has no adequate remedy at law.

95. BlueRidge has never authorized CFM to practice the invention claimed in the '427 Patent.

96. Upon information and belief, CFM will continue to infringe the '427 Patent unless enjoined by this Court.

97. BlueRidge is entitled to relief as provided by 35 U.S.C. §§ 281 and 283-285.

## COUNT IV

### Direct Infringement of the '876 Patent in Violation of 35 U.S.C. § 271(a)

98.    BlueRidge incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

99.    The '876 Patent is valid and enforceable.

100.    CFM has infringed and continues to infringe at least claims 1, 2, 3, and 7 of the '876 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by using the claimed methods of manufacturing fiberglass media to produce the Accused Products.

101.    BlueRidge has been and continues to be damaged by CFM's infringement of the '876 Patent.

102.    CFM's infringement of the '876 Patent has been and continues to be willful.

103.    BlueRidge has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial, through lost profits, lost sales, and/or lost royalties, due to infringement by CFM.

104.    BlueRidge has suffered, and will continue to suffer, permanent and irreparable injury for which BlueRidge has no adequate remedy at law.

105.    BlueRidge has never authorized CFM to practice the invention claimed in the '876 Patent.

106.    Upon information and belief, CFM will continue to infringe the '876 Patent unless enjoined by this Court.

107.    BlueRidge is entitled to relief as provided by 35 U.S.C. §§ 281 and 283-285.

## **PRAYER FOR RELIEF**

WHEREFORE, BlueRidge respectfully requests that this Court enter judgment in BlueRidge's favor and against CFM as follows:

(a)    Judgment that CFM has directly infringed the '462 Patent literally and/or under the doctrine of equivalents.

(b)    Judgment that CFM has directly infringed the '452 Patent literally and/or under the doctrine of equivalents.

(c)    Judgment that CFM has directly infringed the '427 Patent literally and/or under the doctrine of equivalents.

(d)    Judgment that CFM has directly infringed the '876 Patent literally and/or under the doctrine of equivalents.

(e)    Judgment awarding BlueRidge general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with the proofs, including enhanced and/or exemplary damages, as appropriate;

(f)    Judgment awarding BlueRidge all of its costs, including its attorneys' fees, incurred in prosecuting this action, including without limitation, pursuant to 35 U.S.C. § 285;

(g)    Judgment awarding BlueRidge pre- and post-judgment interest; and

(h)     Judgment awarding BlueRidge such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 20, 2025          *s/ Andrew W. Alexander*

**KRITZER MCPHEE LLP**
Noam J. Kritzer
(nkritzer@kmpatentlaw.com)
256 Columbia Turnpike
Edison Suite, Unit 204
Florham Park, New Jersey 07932
Tel: (973) 679-7272

Ryan S. McPhee
(rmcphee@kmpatentlaw.com)
501 W. Broadway, Suite 800
San Diego, California 92101
Tel: (619) 758-3600

**CALFEE, HALTER & GRISWOLD LLP**
Andrew W. Alexander (Bar No. 0091167)
(aalexander@calfee.com)
Chet Bonner (Bar No. 007514)
(cbonner@calfee.com)
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
Tel. 216.622.8200
Fax 216.241.0816

*Attorneys for the Plaintiff:*
*BlueRidge Fiber Solutions, LLC*